


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*John W. Sippel, Jr.*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4807*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*
*John.Sippel@usdoj.gov*

May 26, 2010

Deborah Boardman, Esquire
Office of the Federal Public Defender
Tower II, Suite 900
100 South Charles Street
Baltimore, Maryland 21201-2705

Re: United States v. Dennis Hairston
Criminal No. RDB-09-0546

Dear Ms. Boardman:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **June 1, 2010**, it shall be deemed withdrawn. The terms of the agreement are as follows:

Offenses of Conviction

1. The Defendant agrees to plead guilty to Count One and Count Five of the Indictment now pending against him, which charge him with Conspiracy to Commit Carjacking, in violation of 18 U.S.C. § 371, and Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The Defendant admits that he is, in fact, guilty of the offenses and will so advise the Court.

Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One

In or about June, 2009, in the District of Maryland,

i. There was an agreement between two or more people, including the Defendant, to obtain a motor vehicle from another without that person's consent; and

ii. The conspirators did so by wrongful use of actual or threatened force, violence, or fear; and

iii. As a result of the conspirators' actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree

Count Five

On or about June 15, 2009, in the District of Maryland,

i. The Defendant committed a crime of violence, specifically Carjacking, as charged in Count Four of the Indictment, for which he might be prosecuted in a court of the United States; and

ii. The Defendant knowingly possessed and brandished a firearm during and in relation to the crimes charged in Count Four of the Indictment.

Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: Count One: five (5) years imprisonment; a $250,000 fine; and a period of supervised release of up to three (3) years; Count Five: life imprisonment (with a seven year mandatory minimum term of imprisonment consecutive to any other term of imprisonment imposed); a $250,000 fine; and a period of supervised release of up to five (5) years. In addition, the Defendant must pay $100 per count as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth at Attachment A, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a. The base offense level for Count One is 20 pursuant to U.S.S.G. §§ 2B3.1(a) and 2X1.1(a).

b. The base offense level is increased by 2 because the offense involved a carjacking, pursuant to U.S.S.G. § 2B3.1(b)(5).

c. The parties further stipulate and agree that the guideline sentence for Count Five - Possessing and Brandishing a Firearm in Furtherance of a Crime of Violence, is eighty-four (84) months, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(ii). The Defendant understands that the sentence imposed for this offense must run

consecutively to any other sentence imposed by the Court for any other offense.

e. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level for Count One, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

f. Based on the foregoing, the parties stipulate and agree that the adjusted base offense level for Count One is 19. The parties further stipulate and agree that an additional sentence of 84 months runs consecutive to Count One as a result of Count Five, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(ii).

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to seek a sentence outside of the advisory guidelines range, he will notify this Office no later than 14 days before sentencing of any factors under 18 U.S.C. § 3553(a) he intends to raise.

Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the applicable guidelines range. Also, at the time of sentencing, this Office will move to dismiss any

open counts against the Defendant. The Government will also recommend that his federal sentence run concurrent to any state court sentence.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct~~, including the conduct that is the subject of any counts of the Indictment that this Office has agreed to dismiss at sentencing~~. dwt

Forfeiture of Firearm

11. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following firearms: a Taurus, model PT-99 AFS-D, 9mm semi-automatic pistol, serial number TKG05069, and a Heckler & Koch, model USP Compact, .40 caliber semi-automatic pistol, serial number 26-007130.

Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) as to Count One, the Defendant reserves the right to appeal from any sentence above the advisory guidelines range resulting from an adjusted base offense level of **19**, and as to Count Five, the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds 84 months' imprisonment, consecutive to any term of imprisonment imposed on Count One; and (ii) as to Count

One, this Office reserves the right to appeal from any sentence below the advisory guidelines range resulting from an adjusted base offense level of **19**, and as to Count Five, this Office reserves the right to appeal any term of imprisonment to the extent that it is less than 84 months' imprisonment, consecutive to any term of imprisonment imposed on Count One, and to the extent that the federal sentence imposed is not concurrent. LWJ

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Obstruction or Other Violations of Law

13. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation Officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

Court Not a Party

14. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

15. This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: [signature]
John W. Sippel, Jr.
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

May 28th 2010
Date

[signature]
Dennis Hairston

I am Dennis Hairston's attorney. ~~I have~~ My co-counsel, Lakeytria Felder, has carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises ~~me~~ her that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

June 9, 2010
Date

[signature]
Deborah Boardman, Esquire

**Attachment A**

The United States would prove the following facts beyond a reasonable doubt at trial:

On June 11, 2009, at approximately 9:52 a.m., the Baltimore City Police Department ("BPD") received a call reporting an armed carjacking that occurred in the 3600 block of Elmora Avenue in Baltimore City, Maryland. Police officers met with the victim, who informed the officers that he was sitting in his vehicle, a 2000 Ford Contour, when two males armed with handguns approached the driver's side of the vehicle and told the victim to get out. The victim complied and the two suspects got in the vehicle and drove away.

The victim was transported to the Eastern District to speak with BPD detectives. Soon thereafter, the victim's vehicle was involved in an armed robbery.① Upon further investigation of the robbery, BPD detectives were able to ascertain the identity of one of the two suspects involved in the robbery. The BPD detectives constructed a photo array for the carjacking victim. The victim identified the defendant, Dennis Hairston, as one of the two individuals who carjacked him. A warrant was then issued for the defendant for the carjacking incident.

On June 15, 2009, at approximately 11:20 p.m., BPD received a call reporting an armed carjacking in the area of the 4500 block of Frederick Avenue in Baltimore City, Maryland. Police officers met the victim and the victim stated that a male, later identified as the defendant, Dennis Hairston, approached the victim and told a story of a relative passing away. The defendant also indicated that he needed a ride. The victim's girlfriend then offered to have the victim give the defendant a ride.

The victim was then given directions by the defendant to drive to the 4600 block of Penn Lucy Road and stop in front of 4613 Penn Lucy Road. The defendant then removed a black firearm from his waist area, cocked the hammer, and pointed it at the victim's head. The defendant told the victim to leave his wallet and cell phone in the vehicle and stated that "if you call anybody, I know where you live." The victim was thereafter ordered by the defendant to exit the vehicle. The victim ran to the 4500 block of Frederick Avenue, flagged down a motorist, and called the police.

Following a BPD city-wide broadcast of the vehicle description (a black Chevrolet Tahoe), at approximately 11:40 p.m., BPD detectives were at the intersection of N. Pulaski Street and Mulberry Avenue, when they observed the black Chevrolet Tahoe in question entering the eastbound Route 40 extension. The BPD detectives observed two persons in the vehicle and the driver matched the description provided by the victim. The BPD detectives followed the vehicle and notified additional police units of its location. At the intersection of Fayette Street and Aisquith Street, BPD detectives in unmarked units with activated emergency equipment attempted to box in the stolen vehicle but were unsuccessful. A vehicle pursuit ensued and concluded when the defendant lost control of the vehicle and skidded into the front of 10 S. Exeter Street.

The BPD helicopter, which entered the pursuit earlier, observed two suspects exit the black Tahoe and flee on foot. The helicopter directed the assisting police units to the fleeing suspects. Both the defendant and the passenger were apprehended shortly thereafter by BPD detectives. The helicopter also advised that one of the subjects threw an object underneath a vehicle during the foot chase. The defendant was injured in the vehicle crash and blood trail proceeded from the Tahoe to

① The Defendant, Dennis Hairston, does not concede any involvement in the armed robbery. [initials] DAH

the location of his arrest. Along that route, detectives located a duffle bag under a car parked in a parking lot off of S. Exeter Street. Inside the duffle bag, detectives recovered a Taurus, 9mm semi-automatic pistol, bearing serial number TKG05069, and 14 rounds of ammunition.

The detectives obtained a search warrant for the black Tahoe and recovered a Heckler and Koch, USP Compact, .40 caliber S&W, semi-automatic pistol bearing serial number 26-007130. The pistol was loaded with nine rounds of ammunition.

As a result of the robbery, interstate commerce, or items moving in interstate commerce, i.e. the aforementioned vehicles, were actually affected. Specifically, the vehicles were products of interstate commerce prior to the incidents described herein.

John W. Sippel, Jr.
Assistant United States Attorney

I have read this Statement of Facts and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it, except to the extent noted in Attachment A. The Defendant, Dennis Hairston, does not agree to any legal or factual stipulations regarding the armed robbery. DAH

May 28th 2010
Date

Dennis Hairston

I am Dennis Hairston's attorney. My co-counsel, Lakeytria Felder, has carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

June 9, 2010
Date

Deborah Boardman, Esquire